# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE HUNT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>A. MATEVOUSIAN, et al.,<br><br>　　　　Defendants. | Case No.  1:15-cv-01457-DAD-SAB-PC<br><br>ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>THIRTY-DAY DEADLINE |

　　　Plaintiff is a federal prisoner proceeding pro se and in forma pauperis pursuant to <u>Bivens v. Six Unknown Named</u> Agent, 403 U.S. 388 (1961).  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302.  Currently before the Court is Plaintiff's first amended complaint, filed December 31, 2015.

## I.

## SCREENING REQUIREMENT

　　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail to state a claim on which relief may be granted," or that "seek monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012)(citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff, currently in the custody of the U.S. Bureau of Prisons (BOP) at the United States Penitentiary at Atwater, brings this civil rights action against defendant correctional officials employed by the BOP at USP Atwater. Plaintiff names the following Defendants: Warden A. Matevousian; Associate Warden Snider; Facility Captain Garcia; Lieutenant S. Helling; Lt. Putnam; Dr. N. Peikar; Paramedic S. Vasquez. Plaintiff's claims stem from the denial of mobility assistive devices.

Plaintiff was transferred to USP Atwater on May 4, 2015 from USP Tucson. When Plaintiff arrived at USP Tucson in December of 2013, he was authorized a wheelchair to assist him with mobility. Plaintiff arrived at USP Tucson with a cane. Plaintiff's transfer to USP

Atwater occurred from May 4, 2015, to July 21, 2015. Plaintiff was moved to USP Victorville, then to FCI Mendota, and back to USP Victorville, before finally arriving at USP Awater on July 21, 2015. Plaintiff was allowed to keep all of his medically assistive devices (cane and wheelchair) during his stays at Victorville and Mendota.

Plaintiff alleges that once he arrived at USP Atwater, he was advised by Captain Garcia that his devices would be confiscated. Captain Garcia told Lt. Helling not to allow Plaintiff any of the assistive devices he arrived with. Plaintiff was placed into a holding cell. Approximately one week later Associate Warden Snider informed Plaintiff that USP Atwater was not equipped to address Plaintiff's "handicap needs," and that Plaintiff would be placed in a protective housing unit. (Am. Compl. p. 8.)   Plaintiff's assistive devices fit the criteria for material that could be used as a weapon. Plaintiff advised Snider that while at USP Tucson and USP Victorville, he was housed in the Security Housing Unit (SHU) and was allowed to keep his devices.

Plaintiff alleges that between July 22, 2015, and July 31, 2015, he had to crawl around his cell to get to the toilet. Plaintiff also alleges that Lt. Helling assembled several "use of force teams" to take Plaintiff to the shower area. On July 22, 2015, Dr. Peikar ordered that Plaintiff be allowed the use of crutches while in the SHU. Lt. Helling and Lt. Putnam would not allow Plaintiff the crutches while he was in the SHU.

On July 30, 2015, Warden Matevousian appeared at Plaintiff's cell door.  Plaintiff informed the Warden about the confiscation of his assistive devices. Warden Matevousian advised Plaintiff that the devices would be returned to Plaintiff and that he would be placed in a handicap cell.

On July 31, 2015, Defendant Snider came to Plaintiff's cell and gave Plaintiff a cracked cane, ankle guard, and an orthotic foot brace. Plaintiff alleges that the brace was ineffective. On August 3, 2015, Paramedic Vasquez provided Plaintiff with a modified copy of his medical duty status. Plaintiff asked why the authorization for his assistive devices had expired. She said she was instructed to do so by Capt. Garcia.

On August 4, 2015, Plaintiff informed Defendant Snider that he was aware that there was a cell designed for handicapped inmates and that he needed to be in that cell. Snider told

Plaintiff that there was indeed such a cell (cell 112) but that the shower was broken.  On August 6, 2015, Plaintiff told Lt. Helling that he needed a handicap accessible cell and that he was having difficulties getting onto and off the toilet, and had not taken a shower in a week.  Plaintiff informed Helling that he was "no longer going to cooperate with the removal of restraints unless I was afforded a reasonable accommodation for my handicap needs." (Am. Compl. p. 10.)  Lt. Snider then moved Plaintiff into cell 112.  Plaintiff alleges that the handicap seat had been broken and ripped away from the shower wall.  Plaintiff "again started up my protest for a handicap shower, one that was not broken." (Id.)

### III.

### DISCUSSION

**A.     Conditions of Confinement**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)(quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002)(citation omitted)).  In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Here, Plaintiff fails to allege facts that satisfy the constitutional standard.  Plaintiff has alleged, at most, that when he arrived at USP Atwater, he was temporarily deprived of his assistive devices pending a review of Plaintiff's security requirements.  Plaintiff was provided with assistive devices, although Plaintiff alleges they were ineffective.  The amended complaint alleges, at most, a temporary deprivation and a response to Plaintiff's needs that was inadequate.  Plaintiff has alleged, at most, that officials were negligent. Plaintiff is advised that even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See

1 Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  This claim should therefore be
2 dismissed.

**B.     Exhaustion**

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 49 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life. Porter v. Nussle, 435 U.S. 516, 532 (2002).

The BOP's administrative remedy process for inmates is set out in the Code of Federal Regulations, Title 28, Sections 542.10-542.19.  Inmates may use this administrative remedy process to seek formal review of any aspect of confinement, including medical treatment.  28 C.F.R. § 542.10(a).  The process involves four steps.  In step 1 (called "BP-8"), inmates must first attempt to informally resolve complaints at their institution.  28 C.F.R. §5452.13.  If the issue cannot be resolved informally, inmates next present their complaints in step 2 ("BP-9") to the Warden of their institution.  28 C.F.R. § 542.14.  If an inmate is not satisfied with the Warden's response, the inmate may appeal the matter to the Regional Director (step 3, "BP-10"). 28 C.F.R. §542.15.  The fourth and final step ("BP-11") is an appeal to the Office of General Counsel.  Id.  Inmates have not exhausted the administrative remedy process until requests or appeals have been filed and denied at all levels of the process.  28 C.F.R. § 542.15.

In his first amended complaint, Plaintiff alleges that on July 23, 2015, he received a BP-8 form from the Unit Manager.  Plaintiff alleges that on August 4, 2015, he "gave Counselor Coggins BP-8s and BP-9s complaining about the depriving of my assistive devices." (Am. Compl. p. 7.) Plaintiff alleges that on August 27, 2015, he spoke with Warden Matevousian.

The complaint in this action was filed on September 25, 2015.  It appears that Plaintiff

5

may not have exhausted all of his administrative grievances prior to filing this suit. In order to exhaust, Plaintiff must have sent a BP-10 to the Regional Counsel, received a response, and then sent a BP-11 to the Office of General Counsel and received a response. In his second amended complaint, Plaintiff must more fully allege his efforts at exhausting his administrative remedies prior to filing suit. Plaintiff may, however, dismiss this action without prejudice to the re-filing of this action after Plaintiff has exhausted his administrative remedies using the process described above.

## IV.

## CONCLUSION AND ORDER

For the reasons stated, Plaintiff's complaint fails to state a claim upon which relief may be granted. Plaintiff is granted leave to file an amended complaint within thirty (30) days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)(no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. 662, 678. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in and of itself without reference to the prior or superseded pleading," Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;
2. Plaintiff's first amended complaint, filed December 31, 2015, is dismissed for failure to state a claim;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a second amended complaint or a notice of voluntary dismissal; and
4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim and to obey a court order.

IT IS SO ORDERED.

Dated:   **January 26, 2016**

UNITED STATES MAGISTRATE JUDGE